## THE LONE STAR.[1]

*(Circuit Court, E. D. New York, E. D.   July 21, 1888.)*

1. SALVAGE—VESSEL AT DOCK—FIRE.

    The steam-ship Lone Star lay on the lower side of pier 37, North river, New York, when fire broke out on the wharf, which spread with great rapidity, until the steam-ship herself caught fire.   Various tugs came to her assistance, and, when the hawsers which fastened her to the pier were burned away, some of them drew her out into the stream, where other tugs came alongside, and she was towed, water being pumped on her meantime, to the flats at Weehawken, where she sank, and the fire was extinguished.   *Held,* that the tugs were entitled to salvage.

2. SAME—COMPENSATION—DIFFERENT GRADES OF SERVICE—TOWAGE AND PUMPING.

    The services rendered by the tugs to the steam-ship differed in degree. *Held,* that the most important service was rendered by the tug Pioneer, which put the line on the Lone Star by which she was towed out from the burning pier into the river   To her was awarded $1,800 as salvage.   *Held, further,* that other grades of salvage services were rendered by the tugs which assisted in towing the steam-ship to the flats, and by the tugs which pumped water on the fire.   To these tugs various sums, from $1,000 to $250, were awarded.

3. SAME—BASIS OF COMPUTATION.

    The Lone Star was an iron steam-ship.   She was so much damaged by the fire that she was sold as a wreck.   If she had received no assistance, she would have been sunk in her slip, and would have been raised and sold as old iron. *Held* that, in ascertaining the value to the ship-owner of the services rendered by the salvors, the amount that the owners would have realized from her sale as old iron, if she had so sunk, should be deducted from the proceeds of her sale as a wreck.   For the purposes of this computation of salvage, such amount saved to her owners was found to be from $22,000 to $29,000.   The total award to the tugs was $8,350.

In Admiralty.   Libels for salvage.   Appeal from district court.   34 Fed. Rep. 807.

Eleven different suits were brought against the wreck of the steam-ship Lone Star for salvage services rendered to her in the fire at Morgan's Line pier, New York, in February, 1887.   The suits were consolidated on motion.   From the order of the district court claimants appeal.

*Alexander & Ash,* for Howard.

*Wing, Shoudy & Putnam,* for Kinny, Love, and Chapman.

*Wilcox, Adams & Macklin,* for Bridges.

*Butler, Stillman & Hubbard,* for McCaldin.

*Anson B. Stewart,* for Hofman.

*Edward D. McCarthy,* for Hicks & Sullivan.

*Charles H. Tweed* and *R. D. Benedict,* for the Lone Star.

BLATCHFORD, Justice.   In this case I find the following facts: On the 28th of February, 1887, a fire broke out on a lighter loaded with cotton, which was lying at the outer end of pier 37, North river, New York city. The pier was a covered pier, and its shed was full of cotton in bales, and

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

other goods. The tide was ebb, and a gale was blowing from the north-west. The steam-ship Lone Star was made fast by hawsers to the lower side of pier 37, her bow being about 200 feet inside the outer end of the pier. She had no cargo on board. Shortly after the fire broke out, the steam-ship became enveloped in flames, and all the persons who were on board of her left her. In time the fire burned off the hawsers by which she was made fast to the pier, and, under the influence of the strong wind and the ebb-tide, she would then have drifted across the slip, if she had not been towed out of the slip. This was done by steam-tugs which were requested to perform the service by the superintendent of the steam-ship line to which the Lone Star belonged, and who was then and there present. One of the tugs which towed the Lone Star out was the Pio-neer. That tug, in anticipation of the burning of the fastenings of the Lone Star, placed herself along-side of the Lone Star, and sent a deck-hand named Bridges on board of the Lone Star, who, at considerable personal risk, made fast on the bow of the Lone Star a line hauled by him from on board of the Pioneer. At that time the fire on board of the Lone Star was so intense that the master of the Pioneer required an assurance from the said superintendent that means of escape would be furnished to Bridges when the Pioneer should move away from the Lone Star in order to tow her. As soon as the fastenings of the Lone Star burned off, the Pioneer, being fast to her by a line from her bow, began to move her out of the slip. In rendering the service the Pioneer was aided by the steam-tug Missisquoi, which, at the request of the Pioneer, made fast along-side of the Pioneer after the Lone Star began to move, and with the Pioneer towed the Lone Star out of the slip. At the same time, abaft of the Pioneer, and under the port quarter of the Lone Star, was the steam-tug Harry Roussel. That tug, before the Lone Star be-gan to move out, had made a line fast to her, and had begun to pump water into her through one of her dead-lights. The Harry Roussel had also a line to a lighter, the Angeline Anderson, which lighter was loaded with cotton, and on fire. The Pioneer, the Missisquoi, the Lone Star, the Harry Roussel, and the lighter moved out of the slip together. The Pioneer and the Missisquoi were sufficiently powerful to have together towed the Lone Star out of the slip and to a place where she could be beached; but shortly after they reached the mouth of the slip the towing line of the Pioneer parted, and thereby the Lone Star was at once placed in the peril of going upon the Guion Line dock, pier 38; and, before another line could be got to her, she did touch that pier, but neither did nor received damage thereby. As soon as possible after the line from the Pioneer parted, another line was got upon the Lone Star from the steam-tug Charles Runyon; and she, aided by the steam-tugs Reba, Mis-sisquoi, Egbert Myers, and E. H. Coffin, towed the Lone Star to Wee-hawken, where she was beached. During this time water was being thrown upon the Lone Star from various tugs, which continued to pour water upon her until the fire was extinguished at Weehawken. The dam-age done to the Lone Star was so great that it was thought undesirable to attempt to repair her, and she was sold at auction in her damaged

condition, and brought the sum of $37,500. This was a proper proceeding. If the Lone Star had been left in her slip, and no effort had been made to put out the fire in her, the effect of the fire upon her would have been such that she would have been worthless to be made into a useful vessel of any kind, and would have been good for nothing except to be broken up for old iron. It cost $279 to pump her out and tow her to the Erie basin. After deducting from the net proceeds of sale the amount which would have been realized from the sale of her as old iron, the amount saved to her owners by the salvage services was from $22,-000 to $29,000. The entire salvage service was one continuous service from the time the Lone Star began to move out of the slip until the fire in her was extinguished at Weehawken, participated in by different steam-tugs, at different times, and under different circumstances. The steam-tugs William J. McCaldin, Nellie, John Fuller, Alice Hegarty, James A. Garfield, and George H. Dentz rendered aid in pumping water into the Lone Star, but the service of each of them in towing her was unimportant. The most important service rendered was that of towing her out of the slip. Although the Harry Roussel aided to some extent in moving the Lone Star out of the slip, her services were not equal in value to those rendered by the Pioneer, or the Missisquoi, in the entire service. The services of the Pioneer were of more value than those of any other steam-tug in taking the Lone Star out of the slip. After her line parted the Pioneer aided in pumping, until the fire was extinguished. The owners, master, and crew of the Pioneer rendered salvage services of the value of $1,850, with $10 as disbursements; those of the Harry Roussel of the value of $900, with $5 as disbursements; those of the Missisquoi of the value of $1,000, with $6.05 as disbursements; those of the Charles Runyon of the value of $650, with $5 as disbursements; those of the Reba of the value of $250, with $5 as disbursements; those of the Egbert Myers of the value of $250, with $103.65 as costs and disbursements; those of the E. H. Coffin of the value of $250; those of the William J. McCaldin of the value of $800, with $5.50 as disbursements; those of the Nellie of the value of $800, with $5 as disbursements; those of the John Fuller of the value of $400, with $2.25 as disbursement; those of the Alice Hegarty of the value of $400, with $5 as disbursements; those of the James A. Garfield of the value of $400, with $5.50 as disbursements; those of the George H. Dentz of the value of $400, with $5.50 as disbursements. The man Bridges, of the Pioneer, rendered salvage services of the value of $50, in addition to the other services he rendered as one of her crew.

On the foregoing facts I find the following conclusions of law: A decree should be entered to the same purport as the decree of the district court, and making the same apportionment as that made by that decree among the owners, master, and crew of each vessel, with costs of this court against the claimant, to be taxed.